Filed 11/20/23  In re S.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.B. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.W., <br><br> Defendant and Appellant. | F086446 <br><br> (Super. Ct. Nos. 21CEJ300412-1, 21CEJ300412-2) <br><br> **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Mary Dolas, Judge.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Franson, Acting P. J., Meehan, J. and Snauffer, J.

S.B. (mother) and D.W. (father) are the parents of daughters S.O.B. (born July 2018) and S.A.B. (born January 2020) (the children).  Father appeals from the juvenile court's order terminating his parental rights pursuant to Welfare and Institutions Code section 366.26.[1]  He contends the Fresno County Department of Social Services (department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because the ICWA notices produced by the department contained incomplete information.[2]  The department disagrees.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### Petition and Detention

On November 16, 2021, the department filed a petition on behalf of the children pursuant to section 300, subdivision (b)(1).  The petition contained Indian Child Inquiry Attachment (ICWA-010(A)) forms for both children stating mother and father gave no reason to believe they were or could be Indian children.  The children were detained and placed in a licensed foster home.  On the same date the petition was filed, the department held a team decision making meeting in which maternal grandmother participated.

In its detention report, the department recommended the children be detained.  In regard to ICWA, the report stated ICWA did not apply as mother and father had denied having Indian ancestry.

On November 17, 2021, the juvenile court held a detention hearing in which mother and father were present.  The court conducted an ICWA inquiry with father and

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]     Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

he reported possible Indian ancestry. The court ordered the department to send notice to "any tribe" and the Bureau of Indian Affairs (BIA).[4] The court found a prima facie case had been established and ordered the children detained from mother and father.

*Jurisdiction and Disposition*

In its jurisdiction and disposition report, the department recommended the allegations in the petition be found true, the children be adjudged dependents of the court and remain placed in foster care, and the parents receive reunification services. The report stated ICWA did not apply as the parents had initially denied having Indian ancestry. However, it noted that after the detention hearing, father reported that paternal great-grandfather was Apache from the "Arizona Reservation 101" and paternal great-grandmother was associated with the Yaqui tribe. The department stated it sent notices to the Bureau of Indian Affairs, the Apache tribes, and the Yaqui tribes.

Specifically, in December 2021, the department sent a Notice of Child Custody Proceeding for Indian Child (ICWA-030) form to the Bureau of Indian Affairs, eight Apache tribes, and one Yaqui tribe. The notice stated mother had denied Indian ancestry and that the department made three additional attempts to contact her for further information. Additionally, a family finding had been submitted on her behalf. Despite their attempts, neither mother, nor any maternal family members had contacted the department. Therefore, the notice contained limited information about the maternal family. As for father, the notice stated father had claimed ancestry with the Apache and Pascua Yaqui tribes and he provided information on his familial lineage to the best of his knowledge.

---

**4** The record does not contain a transcript of the detention hearing. It is unclear if mother was also inquired of. The minute order only reflects father was asked about Indian ancestry and although he claimed possible ancestry, the minute order does not contain specific information about his claim.

On January 10, 2022, the juvenile court held a combined jurisdiction and disposition hearing. The allegations in the petition were found true, the children were adjudged dependents of the court and removed from parental custody, and mother and father were ordered to participate in reunification services.

### First Motion to Declare ICWA Inapplicable

On February 22, 2022, after the 60-day noticing period had expired, the department filed a motion to declare ICWA inapplicable stating it had received responses from six tribes stating the children were not Indian children. The department had not received responses from the BIA and three tribes. The following day, the juvenile court held a hearing and found ICWA inapplicable. The department subsequently received responses from two missing tribes, both of which indicated the children were not eligible for enrollment. Only the BIA and the Fort Sill Apache tribe did not respond to the notice.

### Six-Month Status Review

In its status review report, the department recommended terminating mother and father's reunification services and setting a section 366.26 hearing. The report stated that the court had previously found ICWA did not apply.

On September 12, 2022, the juvenile court held a six-month status review hearing, terminated parental rights, and set a section 366.26 hearing.

### Section 366.26 and Second Motion to Declare ICWA Inapplicable

In its section 366.26 report, the department recommended terminating parental rights and selecting adoption as the permanent plan. In regard to ICWA, the department recommended the court continue to find ICWA inapplicable. It noted mother had not made herself available for further inquiry as it had made four attempts to conduct a further inquiry with her, but was unsuccessful. As for father, during further inquiry he reported paternal great-grandfather had been born on an Apache reservation and paternal great-grandmother had Yaqui ancestry. He did not have further information but stated he would work on gathering more details for the department.

On December 19, 2022, the juvenile court held a section 366.26 hearing. The department requested a continuance for ICWA purposes as father had recently provided the names of paternal grandmother and paternal grandfather, which was new information to the department.[5] The hearing was continued.

On January 18, 2023, the juvenile court held a continued section 366.26 hearing, but the department asked for another continuance for ICWA purposes. The hearing was continued.

On March 10, 2023, the department resent ICWA-030 notices to the BIA and the nine tribes. The notice stated the department had conducted a renewed inquiry with mother, and she again denied Indian ancestry and stated she did not have new or updated information. The department also made contact with maternal grandmother, who denied having Indian ancestry and provided her familial lineage to the best of her knowledge. Additionally, a second family finding was issued on mother's behalf, but no further information was obtained. Thereafter, the department made three additional efforts to contact mother for updated information, but she did not return any calls and no further maternal family information was received. As for father, he had provided additional familial information as to paternal great-great-grandparents. The department attempted to contact him three times regarding the additional information but was unsuccessful. The department did, however, conduct an inquiry with paternal aunt Alyssa W. and a family finding was issued on father's behalf, but no new information was obtained. The department decided to resend notices to the tribes. The second notice contained the names of paternal great-great-grandfather and paternal great-great-grandmother.

On May 16, 2023, after the 60-day noticing period expired, the department filed a second motion to declare ICWA inapplicable, stating it had received responses from

---

[5] Father actually provided the names of paternal great-great-grandparents.

five tribes indicating the children were not Indian children. It did not receive responses from the BIA and four tribes.

On May 17, 2023, the juvenile court held a section 366.26 hearing where it found ICWA inapplicable and terminated parental rights. After the court found ICWA inapplicable, the department received responses from two missing tribes. Only the BIA, the Mescalero Apache Tribe, and the San Carlos Apache Tribe did not respond to the second notice.

On June 20, 2023, father filed a notice of appeal.

## DISCUSSION

### I. ICWA

#### A. Legal Principles

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 594 (*K.H.*), fn. omitted; accord, In re *E.C.* (2022) 85 Cal.App.5th 123, 138 (*E.C.*), fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

6.

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### 1. Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents,

7.

legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the [department] shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or

either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)

### B. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2), accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make

9.

credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the [department's] inquiry was proper and adequate within the context of ICWA and California law, and whether the [department] acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

## C. Analysis

In the present case, the department conducted two ICWA inquiries with mother, and she denied having Indian ancestry both times. It is unclear whether the juvenile court ever conducted its own inquiry with mother. The department also conducted an inquiry with maternal grandmother, who denied having Indian ancestry. As for father, he initially denied having Indian ancestry, but when the court conducted an inquiry with him at the detention hearing, he reported he had possible Indian ancestry. He later informed the department that paternal great-grandfather was Apache from the "Arizona Reservation 101" and paternal great-grandmother was associated with the Yaqui tribe. As a result, the department sent ICWA-030 notices to the BIA and all of the federally recognized Apache and Yaqui tribes. After the expiration of the 60-day noticing period, the department had received responses from six out of nine tribes stating the children were not Indian children, and the department filed a motion to declare ICWA inapplicable. The court granted the motion, finding ICWA inapplicable. Subsequently, father provided the names of paternal great-great-grandparents, and the department resent notices to the BIA and the tribes. After the 60-day noticing period had expired, the department filed a second motion to declare ICWA inapplicable, stating it had received responses from five out of nine tribes indicating the children were not Indian children. At the section 366.26 hearing, the court granted the department's motion and again found ICWA inapplicable.

On appeal, father argues the second notice was deficient because the names of paternal great-great-grandmother and paternal great-great-grandfather were not listed. Father is mistaken. The names of both paternal great-great grandparents (i.e., Eduardo S. and Manuela S.), are in fact listed on the second notice. Moreover, the department conducted ICWA inquiries with all maternal and paternal family members it had contact information for, including maternal grandmother and a paternal aunt. It also submitted multiple family findings on behalf of both parents, but was unsuccessful in obtaining

11.

further information from either side of the family.  The department thoroughly documented its efforts to gather such information.  Therefore, we conclude there was no error in ICWA inquiries.

## **<u>DISPOSITION</u>**

The juvenile court's finding that ICWA does not apply is affirmed.